**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GREGORY ALAN ROWE,

    Petitioner,

    v.

SUPT. NANCY GIROUX, et al.,

    Respondents.

CIVIL ACTION NO. 3:13-CV-02444

(JUDGE CAPUTO)

(MAGISTRATE JUDGE MEHALCHICK)

## **MEMORANDUM**

Presently before me is the Report and Recommendation ("R & R") of Magistrate Judge Mehalchick (Doc. 19) to Petitioner Gregory Alan Rowe's Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and motion for expansion of the record (Doc. 10). Magistrate Judge Mehalchick recommends that the Petition for Writ of Habeas Corpus be **denied** because it was untimely filed. Petitioner filed timely objections to the R & R, to which no response was filed. Because I find that statutory tolling was available to the Petitioner, which made the filing of his habeas petition timely, I will reject the R & R and **recommit** the petition back to Magistrate Judge Mehalchick for an adjudication of the petition on the merits. Further, I will **grant** Rowe's motion for expansion of the record to include all appendices and affidavits attached to his section 2254 petition and Memorandum Brief (Docs. 10 and 11).

## **I. Background**

Petitioner Gregory Alan Rowe was convicted before the Court of Common Pleas of Pike County of two counts of first degree murder, two counts of third degree murder, endangering the welfare of a child, and possession of an instrument of crime. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike County C.C.P.).[1] On

---

[1] A federal habeas court may take judicial notice of state court records. *See Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988) (taking judicial

February 8, 2006, Rowe was sentenced to two (2) consecutive life terms followed by eighteen (18) months to ten (10) years imprisonment. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike County C.C.P.). Rowe filed a direct appeal to the Pennsylvania Superior Court, which affirmed the judgment of sentence on April 9, 2007. (Doc. 7-2.) Rowe filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on December 28, 2007. (Doc. 7-3.)

Rowe filed a petition for collateral relief under the Pennsylvania Post Conviction Relief Act ("PCRA") in the Pike County Court of Common Pleas on December 15, 2008, and after the appointment of counsel, an amended PCRA petition was filed on April 30, 2009. In his amended PCRA petition, Rowe raised issues of trial counsel's ineffectiveness in failing to request or obtain DNA testing of the victim's fingernails. (Doc. 7-6.) On December 23, 2009, the PCRA court issued an order denying Rowe's PCRA petition for relief. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike County C.C.P.). On December 30, 2009, Rowe filed a timely notice of appeal of the PCRA decision with the Pennsylvania Superior Court. On February 26, 2010, the Superior Court affirmed the PCRA court's decision. (Doc. 7-4.) Rowe filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on July 25, 2011. (Doc. 7-5.)

On September 6, 2011, Rowe filed a second PCRA petition reiterating earlier ineffective assistance of counsel claims attached to a motion requesting post-conviction DNA testing pursuant to 42 Pa.C.S. § 9543.1. (Doc. 20, Ex. 1.) Rowe's second PCRA petition raised issues of, *inter alia*, trial counsel and PCRA counsel's ineffectiveness in failing to request or obtain DNA testing of the victim's fingernails; failing to interview or

---

notice of all relevant parts of the state court record, whether or not they appeared in the joint appendix prepared by the parties to the appeal). Accordingly, I have taken judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Pike County.

subpoena Joanne Kellerman, a rebuttal witness who would purportedly contradict Commonwealth witness Eric Story; and failing to object to inadmissible evidence. (Doc. 20, Ex. 1.) It appears that the Court of Common Pleas treated both documents as one post-conviction motion for DNA testing and entered an order denying the motion on January 9, 2012. (Doc. 7-6.) On June 20, 2013, the Superior Court affirmed the trial court's denial of Rowe's request for post-conviction DNA testing, also apparently treating Rowe's September 6, 2011 filings as one motion requesting post-conviction DNA testing. (Doc. 7-6, at 4-5.) Shortly thereafter, Rowe promptly filed a petition for allowance on appeal from the order of the Superior Court. On December 3, 2013, the Pennsylvania Supreme Court denied his petition for appeal. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike County C.C.P.).

On September 24, 2013, Rowe submitted the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), together with an accompanying motion to hold in abeyance the habeas petition pending the outcome of his petition for allowance of appeal before the Pennsylvania Supreme Court (Doc. 2.). On December 20, 2013, the Court entered a Show Cause Order, directing Respondents to respond only to Rowe's motion for stay and abeyance and specifically address any arguments with respect to the timeliness of Rowe's habeas petition. (Doc. 4.) On January 9, 2014, Respondents filed a response to the Court's Show Cause Order. (Doc. 7.) On January 28, 2014, Rowe filed a reply to the response. (Doc. 9.) On April 24, 2014, Rowe filed a motion for expansion of the record (Doc. 10) to include all appendices and affidavits attached to his section 2254 petition and Memorandum Brief (Docs. 11-12).

On August 10, 2015, Magistrate Judge Mehalchick issued the instant Report & Recommendation. (Doc. 19.) Magistrate Judge Mehalchick recommends that Rowe's habeas petition be denied because it was not filed in a timely manner. (*Id*.) Rowe filed timely objections to the R & R on August 20, 2015. (Doc. 20.) No responses to Rowe's objections were filed. The R & R and Rowe's objections thereto are now ripe for review.

## II. Legal Standard

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(c)). However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. U.S. Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985). At the very least, the court should review uncontested portions for clear error or manifest injustice. *Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998).

## III. Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal habeas corpus petitions pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d). The statute also prescribes how the one-year limitations period is calculated, including the date on which the limitations period begins, 28 U.S.C. § 2244(d)(1), and the circumstances under which the limitations period may be tolled, 28 U.S.C. § 2244(d)(2).

Under AEDPA, a state prisoner generally must file any federal habeas corpus petition within one (1) year of the date that his conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Where an inmate does not pursue direct review of his conviction all the way to the Supreme Court of the United States, his conviction becomes final when the time for pursuing direct review in that Court, or at any level of

state court, expires. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012).

Here, the Pennsylvania Supreme Court denied Rowe's petition for allowance of appeal from the order of the Pennsylvania Superior Court on December 28, 2007. However, under Pennsylvania state law, Rowe had ninety (90) days after the Pennsylvania Supreme Court denied allocator in which to petition for a writ of certiorari in the Supreme Court of the United States. *See* 42 Pa.C.S. § 9545(b)(3) (judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999) ("After ninety days, the Pennsylvania Supreme Court's decision became final because the time for seeking certiorari expired."). Hence, Rowe's conviction became final, and AEDPA's limitations period began to run on March 27, 2008, upon expiration of the applicable ninety (90) day period to seek certiorari in the Supreme Court. Absent any applicable tolling period, Rowe had one (1) year from that date, until March 27, 2009, to timely file his federal habeas petition for a writ of habeas corpus. The instant petition was filed more than four (4) years later on September 24, 2013.

In her Report and Recommendation, Magistrate Judge Mehalchick recommends that Rowe's habeas petition be denied because neither statutory nor equitable tolling was available to him to make the filing of his habeas petition timely. According to Magistrate Judge Mehalchick, no statutory tolling was available to Rowe because his motion for post-conviction DNA testing did not constitute a "properly filed application for . . . other collateral review" under section 2244(d)(2). Additionally, no equitable tolling was available to Rowe because he failed to show that anything extraordinary prevented him from establishing his actual innocence claims. Therefore, Magistrate Judge Mehalchick recommended that his habeas petition be denied as time-barred.

Rowe, as stated, filed timely objections to the Report and Recommendation. First, Rowe objects to Magistrate Judge Mehalchick's recommendation that statutory tolling was not available to him, arguing that she misconstrues the filing of his second PCRA petition, as did the Pennsylvania state courts, by treating it only as a motion for

5

post-conviction DNA testing.  Second, Rowe objects to Magistrate Judge Mehalchick's recommendation that equitable tolling was not available to him, arguing that she ignored new evidence that was not presented at trial that he asserts would have established actual innocence.  Rowe's first objection will be sustained and Magistrate Judge Mehalchick's Report and Recommendation will not be adopted.

## A.     Statutory Tolling

A person in state custody may toll the running of AEDPA's limitations period during the time in "which a properly filed application for State post-conviction or other collateral review . . . is pending."  28 U.S.C. § 2244(d)(2).  Rowe filed his first *pro se* PCRA petition in the Pike County Court of Common Pleas on December 15, 2008, which was 263 days after his conviction became final.  When Rowe's PCRA petition was dismissed by the Court of Common Pleas, he appealed to the Superior Court.  When the Superior Court affirmed the dismissal of his PCRA petition, Rowe petitioned the Supreme Court of Pennsylvania for allocator, which was denied on July 25, 2011.  Accordingly, AEDPA's statute of limitations period began to run again for an additional 102 days (one year less 263 days), ending on November 4, 2011.  *See generally Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (explaining tolling under AEDPA).  Therefore, the timeliness of Rowe's habeas petition turns on whether either of his filings on September 6, 2011, which included a motion requesting post-conviction DNA testing and a second PCRA petition, tolled AEDPA's statute of limitations from September 6, 2011, through December 3, 2013, the date on which the Supreme Court of Pennsylvania denied allocator.  I will address each motion in turn.

### 1.     Rowe's Motion for Post-Conviction DNA Testing

I agree with Magistrate Judge Mehalchick's assessment that there is no statutory tolling available to Rowe based on his motion for post-conviction DNA testing.  The issue of whether a motion for post-conviction DNA testing constitutes a "properly filed application for . . . other collateral review" under section 2244(d)(2) is an issue of first impression in this Circuit.  In analyzing this issue, I first turn to Pennsylvania's DNA

testing statute in determining whether Pennsylvania treats a motion for DNA testing as a collateral attack.  Rowe's motion was filed pursuant to 42 Pa.C.S. § 9543.1, which states, in relevant part:

> An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

42 Pa.C.S. § 9543.1(a)(1).  If the DNA testing motion is granted and the testing has been completed, the statute stipulates that "the applicant may, pursuant to section 9545(b)(2) (relating to jurisdiction and proceedings), during the 60-day period beginning on the date on which the applicant is notified of the test results, petition to the court for postconviction relief pursuant to section 9543(a)(2)(vi) (relating to eligibility for relief)." 42 Pa.C.S. § 9543.1(f)(1).

Pennsylvania state courts have recognized that "[p]ost conviction DNA testing does not directly create an exception to § 9545's one-year time bar. . . . Rather it allows for a convicted individual to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa.C.S. § 9545(b)(2)." *Commonwealth v. Weeks*, 831 A.2d 1194, 1196 (2003).  In other words, a motion for post-conviction DNA testing does not constitute an application for collateral review in and of itself; rather, it is a motion to obtain evidence, which, if favorable, could then be used *in support* of an application for collateral review.  Therefore, I find that Rowe's motion for post-conviction DNA testing was not a "properly filed application for . . . other collateral review" and therefore did not toll AEDPA's limitations period to make the filing of his habeas petition timely.

Three federal appellate courts that have confronted this issue have also come to the same conclusion.  In *Price v. Pierce*, 617 F.3d 947 (7th Cir. 2010), the Seventh Circuit Court of Appeals held that a motion for DNA testing to prove actual innocence does not toll the statute of limitations because a successful motion merely entitles the

7

petitioner to evidence, not release, under Illinois' DNA statute, 725 ILCS 5/116-3.  The court specifically noted the following:

> [W]hen a defendant moves under § 116-3 for forensic testing, the best that can happen is that the trial court grants the motion, the tests are performed, and the defendant receives the results.  The defendant may choose to use the results of the DNA test in a *separate* post-conviction petition for relief claiming his or her actual innocence, but no hearing automatically follows.  Further, nothing in the plain language of the statute or in any of the state court opinions of which we are aware gives the trial court the authority to release a defendant from custody under § 116-3.

*Price*, 617 F.3d at 952-53 (7th Cir. 2010).  Consistent with the Seventh Circuit Court of Appeals, the Eleventh Circuit Court of Appeals held that Florida's DNA testing statute, Florida Rule of Criminal Procedure 3.853, does not toll AEDPA's statute of limitations.  In *Brown v. Sec'y for the Dep't of Corr.*, 530 F.3d 1335 (11th Cir. 2008), the court reasoned that:

> A Rule 3.853 proceeding involves an application for discovery only, pursuant to which the court lacks authority to order relief from the movant's sentence or conviction based on the DNA test results.  If the movant believes those results provide a basis for a successful collateral attack on his judgment of conviction, he may then institute a proceeding under Florida's collateral attack rules and only in that manner secure such relief.

*Id.* at 1337-38 (citations and internal quotation marks omitted).  In following *Price* and *Brown*, the Tenth Circuit Court of Appeals has also followed suit and held that a prisoner's post-conviction Kansas state court motion for DNA testing was not an application for "collateral review" and therefore did not toll AEDPA's limitations period.  *Woodward v. Cline*, 693 F.3d 1289, 1293-94 (10th Cir. 2012).  More generally, the Second and the Ninth Circuit Courts of Appeals have held that a petitioner's motion to request additional discovery does not constitute an "application for . . . other collateral review" under section 2244(d)(2).  *See, e.g.*, *Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001) (holding that a petitioner's Article 78 proceeding to obtain additional documents was not an "application for State post-conviction or other collateral review" within the meaning of subsection 2244(d)(2)); *Ramirez v. Yates*, 571 F.3d 993, 999-1000 (9th Cir. 2009) (following *Hodge* and holding that the petitioner's discovery motions filed independently of his habeas petition did not statutorily toll AEDPA's limitations period).

However, the Fifth Circuit Court of Appeals has reached the opposite conclusion with respect to Texas' DNA testing statute, Texas Code of Criminal Procedure article 64.04.  In *Hutson v. Quarterman*, 508 F.3d 236 (5th Cir. 2007), the Fifth Circuit held that Texas' DNA testing statute *did* constitute an application for collateral review that would toll AEDPA's statute of limitations.  The Fifth Circuit explained that if DNA testing is ordered under Texas Code of Criminal Procedure articles 64.01-64.03, there is an automatic judicial reconsideration of the judgment imposing the applicant's sentence:

> After examining the results of the testing, the convicting court **shall hold a hearing** and make a finding as to whether it is reasonably probable that the person would not have been convicted had the results been available during the trial of the offense.  If the convicting court decides that the finding is favorable to the convicted person under article 64.04, **the court may release the convicted person** on bail pending the conclusion of court proceedings . . . .

*Id.* at 238-39 (footnotes and internal quotation marks omitted) (emphasis added).  The Fifth Circuit characterized a number of Texas state court opinions as equating "the Texas statute providing for post-conviction DNA proceedings with habeas corpus proceedings in that both make a collateral inquiry into the validity of the conviction."  *Id.* at 239 (internal quotation marks omitted).

Unlike Texas procedure, but similar to Illinois, Florida, and Kansas procedure, a motion for post-conviction DNA testing in Pennsylvania does not provide for an automatic judicial reconsideration of the judgment imposing the applicant's sentence, or for immediate release, but rather only entitles a petitioner to discovery that can then be incorporated into a subsequently filed PCRA petition.  Therefore, I agree with Magistrate Judge Mehalchick and find that Rowe's motion for post-conviction DNA testing pursuant to 42 Pa.C.S. § 9543.1 is not itself a collateral attack, but rather is more akin to a discovery motion, and thus cannot toll AEDPA's statute of limitations.

Accordingly, Rowe's instant federal habeas petition is time-barred unless there are other grounds for statutory tolling of AEDPA's statute of limitations, or unless there are grounds for equitable tolling.

### 2. Rowe's Second PCRA Petition

Rowe objects to Magistrate Judge Mehalchick's Report and Recommendation, asserting that she, along with the Pennsylvania state courts, misconstrued his second PCRA petition as part of his post-conviction DNA testing motion. In her Report and Recommendation, Magistrate Judge Mehalchick did not address whether Rowe's second PCRA petition, filed the same day as and attached to his motion for post-conviction DNA testing, served to toll AEDPA's statutory limitations period so that his habeas petition would be timely. Instead, she stated that "the timeliness of the petition turns on whether Rowe's ***motion requesting post-conviction DNA testing*** in state court also tolled the statute of limitations" for his federal habeas petition. (Doc. 19, at 5 (emphasis added).) In a footnote, she noted that it was unclear whether a second PCRA petition had been filed:

> It is unclear from the record whether Rowe filed a second PCRA petition or a motion for post-conviction DNA testing. The Superior Court reasoned that the motion for post-conviction testing included a second PCRA petition that Rowe argued would demonstrate a reasonable probability that the DNA results would establish his innocence. Accordingly, both the PCRA court and Superior Court treated the motion solely as a request for post-conviction DNA testing. The court noted, however, that the PCRA-related requests for relief contained within the motion were improperly commingled with his request for DNA testing and furthermore, were fully and finally litigated in his first PCRA petition, citing 42 Pa.C.S. § 9544 as the basis for rejecting those claims.

(Doc. 19, at 5 n.2.)

Notwithstanding the Pennsylvania state courts' treatment of Rowe's September 6, 2011 filings as one motion for post-conviction DNA testing, Rowe filed two separate documents: (1) a motion for post-conviction DNA testing ***and*** (2) a second PCRA petition. (*See* Doc. 20, Ex. 1.) Rowe made clear that his filings were to be treated as two separate documents on the filings themselves, which state:

> Therefore, as stated within petitioner [sic] second Motion for DNA testing; the attached is Separate, Attached, and Incorporated [sic]. AS SUCH, ***the 'Motion for DNA Testing' being a separate and distinct filing from the PCRA petition to which it is attached, MUST be separately decided*** in such a way that either finalizes the motion as an appealable Order, or grants the Motion and allows testing of said evidence.

(*Id.* at 8(a) (emphasis added).)[2]

### a. What Constitutes "Properly Filed" Under Section 2244

Even though the Pennsylvania state courts rejected the claims ***contained within*** Rowe's second PCRA petition because they found that they were fully and finally litigated in his first PCRA petition, such a rejection on the merits does not mean that the second PCRA petition was not "properly filed" for purposes of tolling the limitations period under AEDPA.  *See Artuz v. Bennett*, 121 S. Ct. 361, 364-65 (2000) (holding that an application for state post-conviction relief or collateral review is "properly filed" as required to toll AEDPA's limitations period for filing federal habeas petition when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, notwithstanding the substance or merits of the claims contained within the application itself).  In *Artuz v. Bennett*, the Supreme Court explained that the issue of whether an application is "properly filed" under section 2244 refers only to whether the application complies with the applicable laws and rules governing filings, not whether the claims contained within the application are meritorious or procedurally barred:

> [A]n application is '***properly*** filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. . . . [T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims ***contained in the application*** are meritorious and free of procedural bar.

*Id.* at 364 (citation omitted).  Consistent with this interpretation, in *Lovasz v. Vaughn*, 134 F.3d 146 (3d Cir. 1998), the Third Circuit directly addressed the issue of "what constitutes 'a properly filed application' to trigger the tolling mechanism of § 2244(d)(2)," holding that "properly filed" only refers to whether the application complies with

---

[2] To be sure, even Respondents acknowledged that Petitioner filed two separate documents–a motion for post-conviction DNA testing and a second PCRA petition. (*See* Doc. 7-1, at 4.)

applicable filing rules, as opposed to the merits of the application:

> We believe that "a properly filed application" is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing. A Pennsylvania PCRA petitioner, for example, must file a motion with the clerk of the court in which he was convicted and sentenced, Pa. R. Crim. P. 1501, generally within one year of the date the judgment becomes final, 42 Pa. Cons.Stat. Ann. § 9545(b)(1). If a petitioner complies with these procedural requirements, or other procedural requirements the state imposes, his petition, even a second or successive petition, is "a properly filed application" for purposes of § 2244(d)(2). . . .
>
> Further, we reject the notion that a meritless PCRA petition cannot constitute "a properly filed application" under § 2244(d)(2). Rather, in considering whether a petition for post-conviction relief is properly filed, district courts should not inquire into its merits.

*Id.* at 148-49.

Therefore, for purposes of tolling AEDPA's limitations period, it is of no matter whether or not the Pennsylvania state courts found the claims contained within Rowe's second PCRA petition "meritless" or barred because they were previously litigated. For tolling AEDPA's limitations period, it matters only whether or not the filing of Rowe's second PCRA petition complied with the applicable laws and rules governing filings. *Id.*

Here, the filing of Rowe's second PCRA petition complied with the applicable laws and rules governing filings and was therefore "properly filed" for purposes of tolling AEDPA's limitations period. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Rowe filed his second PCRA petition with the clerk of the court in which he was convicted and sentenced, *see* Pa. R. Crim. P. 1501, and as I will explain below, within one (1) year of the date that his judgment became final, *see* 42 Pa.C.S. § 9545(b)(1). *See Lovasz v. Vaughn*, 134 F.3d 146, 148-49 (3d Cir. 1998) (explaining that a PCRA petition is "properly filed" for purposes of AEDPA tolling if the petition was filed with the clerk of the court in which he was convicted and sentenced and within one year of the date the judgment became final). Therefore, Rowe's second PCRA petition was "properly filed," making him eligible for statutory tolling under section

2244(d)(2).

### b. Rowe's Second PCRA Petition Was Properly Filed

Under Pennsylvania law, a judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review, which in this case, would be ninety (90) days. *See* 42 Pa.C.S. § 9545(b)(3); *see also Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999) ("After ninety days, the Pennsylvania Supreme Court's decision became final because the time for seeking certiorari had expired.") (citing S.Ct. R. 13(1)). The Pennsylvania Supreme Court denied allocator on December 28, 2007. Therefore, Rowe had ninety (90) days after this date, until March 27, 2008, to petition for writ of certiorari in the Supreme Court of the United States. March 27, 2008 would have been the date that Rowe's conviction became final.

However, Rowe filed his first PCRA petition on December 15, 2008, which was 263 days after his conviction became final. This made him eligible for statutory tolling under AEDPA, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). When Rowe's petition was dismissed by the Court of Common Pleas, he appealed to the Superior Court. When the Superior Court affirmed the dismissal, Rowe petitioned the Supreme Court of Pennsylvania for allocator, which was denied on July 25, 2011. Accordingly, the statute of limitations period under AEDPA began to run again for an additional 102 days (one year less 263 days), ending on November 4, 2011. *See generally Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (explaining that AEDPA's limitations period is tolled while state courts review an application for state post-conviction or other collateral review).

However, Rowe then filed his second PCRA petition on September 6, 2011, along with his motion requesting post-conviction DNA testing. This was timely because it was

within one (1) year from October 24, 2011, the date that his conviction became final.[3]

Because Rowe's second PCRA petition was both (1) filed with the clerk of the court in which he was convicted and sentenced, *see* Pa. R. Crim. P. 1501, and within one year of the date that his judgment became final, *see* 42 Pa.C.S. § 9545(b)(1), his petition was "properly filed" for purposes of statutory tolling under AEDPA. *See Lovasz v. Vaughn*, 134 F.3d 146, 148-49 (3d Cir. 1998) (explaining that a PCRA petition is "properly filed" for purposes of AEDPA tolling if the petition was filed with the clerk of the court in which he was convicted and sentenced and within one year of the date the judgment became final).

### c. Rowe's Habeas Petition Was Timely Filed

Because Rowe's petition made him eligible for statutory tolling under AEDPA, the time period during which his application was pending does not count toward his statute of limitations. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). This time period was from September 6, 2011, the date on which Rowe filed his second PCRA petition, through December 3, 2013, the date on which the Pennsylvania Supreme Court denied Rowe's petition for appeal of the denial of his petition.

As noted earlier, Rowe's statute of limitations, which had been tolled by his first PCRA petition, began to run again for an additional 102 days from July 25, 2011, the

---

[3] Rowe's conviction became final on October 24, 2011, because that is ninety (90) days after July 25, 2011, the date on which the Supreme Court of Pennsylvania denied allocator. *See* 42 Pa.C.S. § 9545(b)(3) (judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review); *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999) ("After ninety days, the Pennsylvania Supreme Court's decision became final because the time for seeking certiorari expired."); *see also* 1 Pa.C.S. § 1908 (providing that whenever the last day of any such period shall fall on a Saturday or Sunday, such day shall be omitted from the computation).

date on which the Supreme Court of Pennsylvania denied allocator. However, the limitations period was tolled again while his second PCRA petition was pending, which was from September 6, 2011, through December 3, 2013. Accordingly, Rowe had until January 31, 2014, to file his habeas petition.[4] Rowe filed his habeas petition before this date, on September 24, 2013. Therefore, Rowe's instant habeas petition is timely.

**B.     Equitable Tolling**

Rowe also objects to Magistrate Judge Mehalchick's recommendation that equitable tolling was not available to him to make his habeas petition timely. However, because I have already found that statutory tolling was available to make his habeas petition timely, I need not address whether equitable tolling would also make his petition timely.

**C.     Motion for Expansion of Record**

Magistrate Judge Mehalchick recommends denying Rowe's motion for expansion of the record as moot because of her recommendation that his habeas petition be denied as untimely. However, because I have found that Rowe's habeas petition *was* timely due to statutory tolling, I will grant his motion for expansion of the record to include all appendices and affidavits attached to his section 2254 petition and Memorandum Brief (Docs. 10 and 11).

### IV. Conclusion

For the above stated reasons, I will reject the Report and Recommendation (Doc. 19). Rowe's Petition for Writ of Habeas Corpus (Doc. 1) will be recommitted to Magistrate Judge Mehalchick for an adjudication on the merits in accordance with this Memorandum and Rowe's motion for expansion of the record (Doc. 10) will be granted.

---

[4] Forty-three (43) of Rowe's 102 days had passed from July 25, 2011 until September 6, 2011. Therefore, once Rowe's statute of limitations re-commenced on December 3, 2013, he had fifty-nine (59) of his 102 days left to file his habeas petition, which means that he had until January 31, 2014 to file his habeas petition.

An appropriate order follows.

| | |
|---|---|
| October 14, 2015 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |