## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GREGORY ALAN ROWE,

      Petitioner,

   v.

SUPT. NANCY GIROUX, et al.,

      Respondents.

CIVIL ACTION NO. 3:13-CV-02444

(CAPUTO, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

This matter is presently before the undersigned United States Magistrate Judge on remand from the District Judge to evaluate *pro se* Petitioner Gregory Alan Rowe's petition for habeas corpus pursuant to 28 U.S.C. § 2254 in accordance with the District Judge's Memorandum and Order dated October 14, 2015. For the reasons provided herein, upon careful consideration of the District Court's Memorandum and Order and the parties' briefing, it is respectfully recommended that the petition for writ of habeas corpus (Doc. 1), be denied on timeliness grounds.

### I.   STATEMENT OF THE CASE

#### A.  PROCEDURAL HISTORY OF STATE COURT PROCEEDINGS

This case has a somewhat complicated procedural history bearing recitation. *Pro se* Petitioner Gregory Alan Rowe was convicted before a jury in the Court of Common Pleas of Pike County on January 25, 2006 on two counts of murder in the first degree, two counts of murder in the third degree, one count of possession of instrument of a crime, and one count of endangering the welfare of a child. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike Cnty. C.C.P.). On February 8, 2006, Rowe received a total aggregate sentence of two

consecutive life sentences without the possibility of parole for the murder convictions, and an additional eighteen (18) months to ten (10) years' incarceration to be run consecutive to the life sentences for the misdemeanor convictions. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike Cnty. C.C.P.). Following an appeal, the Superior Court of Pennsylvania affirmed the judgment of sentence on April 9, 2007. (Doc. 33-2). Thereafter, Rowe filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on December 28, 2007, thereby concluding the direct review process. (Doc. 33-3).

On December 15, 2008, Rowe filed a timely *pro se* petition for collateral relief under the Pennsylvania Post Conviction Relief Act ("PCRA") in the Pike County Court of Common Pleas. An amended, counseled PCRA petition was filed on April 30, 2009. On December 23, 2009, the Pike County Court of Common Pleas entered an order denying Rowe's PCRA petition. (Doc. 34-2). On December 30, 2009, Rowe, through counsel, filed a notice of appeal to the Superior Court. The Superior Court affirmed the denial of Rowe's PCRA petition on December 9, 2010. (Doc. 35-1). Rowe then petitioned the Supreme Court of Pennsylvania for allowance of appeal, which was denied on July 25, 2011. (Doc. 35-2).

On September 6, 2011, Rowe filed a second petition for post-conviction collateral relief that was appended to a motion requesting post-conviction DNA testing pursuant to 42 Pa. Cons. Stat. § 9543.1. (Doc. 35-3). Despite Rowe's explicit instructions that the motion for DNA testing be detached from the second PCRA petition and docketed separately, the Pike County Court of Common Pleas nevertheless construed both documents as one post-conviction motion for DNA testing. Rowe's motion for DNA testing was denied in an order dated January 9, 2012. A timely appealed followed. On June 20, 2013, the Superior Court affirmed the January

- 2 -

9, 2012 order denying Rowe's request for DNA testing.[1] (Doc. 36-2). Rowe promptly filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on December 3, 2013. (Doc. 36-3).

B. PROCEDURAL HISTORY OF FEDERAL PROCEEDINGS

On September 24, 2013, the Clerk of Court received and docketed a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed and dated by Rowe on September 17, 2013. (Doc. 1). Together with his petition, Rowe filed an accompanying motion to hold in abeyance these federal proceedings pending disposition of his petition for allowance of appeal before the Pennsylvania Supreme Court, as the Pennsylvania Supreme Court had not yet entered any ruling with respect to his petition for allocatur at the time Rowe filed his federal habeas petition. (Doc. 2). On December 20, 2013, the District Judge entered a Show Cause Order directing service of both the habeas petition and motion to stay on Respondents. Respondents were instructed in that Order that the response be limited to a discussion of the merits of the motion to stay and the timeliness of the habeas petition. (Doc. 4). On January 9, 2014, Respondents filed a response to the Show Cause Order in which they argued that the motion to stay be denied in light of the Pennsylvania Supreme Court's denial of Rowe's petition for allowance of appeal on December 3, 2013, and that the habeas petition be dismissed as

---

[1] The Superior Court likewise interpreted Rowe's filing as a motion for DNA testing filed pursuant to 42 Pa. Cons. Stat. § 9543.1. Based upon the characterization of Rowe's filing as a DNA testing motion, the Superior Court declined to entertain Rowe's ineffective assistance of counsel claims because a motion for DNA testing can only advance a single claim: that the convicted individual is entitled to DNA testing of evidence related to the investigation or prosecution that resulted in the judgment of conviction. Further, the Superior Court held that even if it could entertain the ineffective assistance of counsel issues raised in Rowe's motion, that issue had been fully and finally litigated. (Doc. 36-2, at 5-6).

untimely. (Doc. 7). On January 28, 2014, Rowe filed a reply to the response along with a memorandum of law in support of his petition for writ of habeas corpus. (Doc. 9). On May 22, 2015, this matter was referred to the undersigned United States Magistrate Judge for report and recommendation in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1). On August 3, 2015, this Court entered an Order denying as moot Rowe's motion to stay on the basis that the Pennsylvania Supreme Court had previously denied Rowe's petition for allowance of appeal on December 3, 2013, thereby rendering the unexhausted claims contained within his mixed habeas petition exhausted. (Doc. 18).

On August 10, 2015, the undersigned entered a Report and Recommendation recommending that Rowe's petition be dismissed as untimely. (Doc. 19). Specifically, this Court considered as a matter of first impression the narrow issue of whether a post-conviction request for DNA testing under 42 Pa. Cons. Stat. § 9543.1 constituted a "properly filed application for . . . other collateral review" as required under 28 U.S.C. § 2244(d)(1)(A). After conducting an exhaustive inquiry into the Pennsylvania state courts' construction of its DNA testing statute, and further reviewing the decisions of federal appellate courts confronted with determining whether similar state DNA testing motions had a tolling effect, the Court concluded that a motion for forensic DNA testing of evidence filed pursuant to 42 Pa. Cons. Stat. § 9543.1 is more akin to a discovery motion than that of a collateral inquiry into the validity of the conviction, and thus held that the motion could not operate to toll the one-year statute of limitations to file a writ of habeas corpus in federal court. In light of that determination, the Court found that while Rowe's first PCRA petition effectively tolled the one-year statute of limitations for the filing of his federal habeas corpus petition, his September 6,

- 4 -

2011 post-conviction motion, construed by the state courts as a request for DNA testing under 42 Pa. Cons. Stat. § 9543.1, did not toll the statute of limitations.[2] Consequently, because the Court facially accepted for purposes of its analysis that Rowe's post-conviction motion was that of a motion for DNA testing as construed by the state courts rather than a second PCRA petition filed pursuant to 42 Pa. Cons. Stat. § 9545(b)(1), it did not delve into a discussion of whether that filing, if deemed to be a second PCRA petition, was "properly filed" as required to toll the statute of limitations.

Rowe subsequently objected to the Report and Recommendation, arguing, among other things, that the second filing should have been construed as a properly filed PCRA petition, thus tolling the statute of limitations and making his federal habeas petition timely. (Doc. 20). Considering Rowe's objections, in a Memorandum and Order dated October 14, 2015, the District Judge rejected the undersigned's Report and Recommendation and remanded the matter back to the undersigned for further adjudication. (Doc. 24; Doc. 25). Notably, the District Judge adopted that portion of the undersigned's Report and Recommendation that found that a post-conviction DNA testing motion is not in and of itself a collateral attack and therefore cannot toll the statute of limitations for purposes of habeas review. (Doc. 24, at 7). However, it departed from the undersigned's characterization of Rowe's second filing as a post-conviction DNA testing motion instead of a second PCRA petition. The District Judge went on to find that Rowe's second PCRA petition was properly filed, thereby effectively tolling the

---

[2] The Court also rejected Rowe's alternative argument of actual innocence as an "extraordinary circumstance" entitling him to receive equitable tolling. (Doc. 19, at 9).

statute of limitations and making his federal habeas petition timely.[3] Thus, the habeas petition was recommitted to the undersigned for adjudication on the merits.

In accordance with the Memorandum and Order, supplemental briefing was ordered from the parties. (Doc. 26). On February 8, 2016, Respondents filed their response to Rowe's habeas petition. (Doc. 33). On February 25, 2016, Rowe filed a reply. (Doc. 40). Having been fully briefed, this matter is now ripe for adjudication.

## II.  DISCUSSION

Respondents have advanced several different grounds for denying Rowe's habeas claims. Chief among them is the claim that Rowe's habeas petition is untimely even when construing Rowe's second collateral review filing as a PCRA petition, as his second PCRA petition was not "properly filed" in accordance with 28 U.S.C. § 2244(d)(1)(A).[4] Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the timeliness of a habeas petition is a threshold question that a court must decide before reaching the merits of a habeas petitioner's claims. Thus, the narrow issue requiring resolution from this Court at this juncture in the proceedings is whether Rowe's habeas petition is time-barred.

---

[3] Because the District Judge found that Rowe's habeas petition was timely due to statutory tolling, it declined to address "whether equitable tolling would also make his petition timely." (Doc. 24, at 15).

[4] While the undersigned recognizes that the District Judge found the second PCRA petition to be timely filed, this is the first occasion that either the undersigned or the District Court has had the opportunity to consider the issue of timeliness with the benefit of full briefing by the parties and the complete record of the state court proceedings. Moreover, this is the first time that a party has been able to raise a timeliness argument since the District Judge construed the second post-conviction filing as a second PCRA petition.

A.  THE AEDPA'S STATUTE OF LIMITATIONS

The AEDPA establishes a one-year statute of limitations for the filing of federal habeas corpus petitions pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d). The statute also prescribes how the one-year limitation period is calculated, including the date on which the limitation period begins, 28 U.S.C. § 2244(d)(1), and the circumstances in which the limitation period may be tolled, 28 U.S.C. § 2244(d)(2).

**1.  Calculation of the Applicable Limitation Period**

Under the AEDPA, a prisoner generally must file any federal habeas corpus petition within one year of the date that his conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A). Where a petitioner does not pursue direct review of his conviction all the way to the Supreme Court of the United States, his conviction becomes final when the time for pursuing direct review in that Court, or in state court, expires. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012). Here, the Pennsylvania Supreme Court denied Rowe's petition for allocatur on December 28, 2007. Rowe had ninety (90) days thereafter to file a petition for a writ of certiorari with the United States Supreme Court. Thus, Rowe's conviction became final (and the federal one-year statute of limitations began to run) on March 27, 2008, when the ninety (90) day period during which Rowe could have filed a petition for writ of certiorari in the United States Supreme Court elapsed. *See Kapral v. United States*, 166 F.3d 565, 570–71 (3d Cir. 1999) ("[I]f a defendant does not file a certiorari petition, the judgment of conviction does not become 'final' until the time for seeking certiorari review expires.").

Rowe therefore had until March 27, 2009 to timely file his federal habeas petition. The

instant petition was docketed on September 24, 2013, approximately four-and-a-half years after the expiration of the deadline. Accordingly, absent any applicable tolling period, Rowe's instant petition is time-barred.

### 2. Statutory Tolling of the Limitation Period

A person in state custody may toll the running of the AEDPA's limitation period during the time in "which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).

In this case, it is abundantly clear that the filing of Rowe's first *pro se* PCRA petition on December 15, 2008—263 days after his conviction became final on March 27, 2008—served to toll the AEDPA's statute of limitations. Indeed, the AEDPA's limitations period was effectively tolled from December 15, 2008 (the date Rowe timely filed his first *pro se* PCRA petition) to July 25, 2011 (the date the Pennsylvania Supreme Court denied his request for allowance of appeal), with 102 days remaining in the federal habeas filing period (one year less 263 days). [5] Thus, Rowe was required to file the instant habeas petition on or before November 4, 2011. Again, Rowe filed his § 2254 petition on September 24, 2013, 690 days after the deadline.

However, the parties continue to dispute whether Rowe's inchoate second post-conviction filing seeking DNA testing submitted on September 6, 2011, which the District

_____

[5] As a note, the ninety (90) day period during which a state prisoner may file a petition for a writ of certiorari in the United States Supreme Court from the denial of his state PCRA petition "does not toll the one year limitations period set forth at 28 U.S.C. § 2244(d)(2)," "especially where the state prisoner fails to file such a petition." *Stokes v. Dist. Attorney of City. of Phila.*, 247 F.3d 539, 543 (3d Cir. 2001); *Hubley v. Superintendent, SCI Camp Hill*, 57 F. App'x 927, 929 (3d Cir. 2003) (citing *Stokes*, 247 F.3d at 542-43). Thus, the one-year statutory period in this case resumed again on July 25, 2011, the date the Pennsylvania Supreme Court denied Rowe's petition for allocatur.

Judge determined to be a second PCRA petition, was a properly filed application for state collateral review as required to trigger the tolling mechanism of § 2244(d)(2). Indeed, if Rowe's second PCRA petition was "properly filed," the statute of limitations for his habeas petition would have been further tolled from September 6, 2011, the date his second PCRA petition was filed in state court, through December 3, 2013, the date the Pennsylvania Supreme Court denied his petition for allowance of appeal. Under these circumstances, Rowe's habeas corpus petition, filed on September 24, 2013, would be timely. *See Merritt v. Blaine*, 326 F.3d 157, 161-62 (3d Cir. 2008). Thus, the narrow issue to be decided by this Court is whether Rowe's second PCRA petition was "properly filed."

To reiterate, the AEDPA's one-year statute of limitations may only be tolled for the "time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). An application is "properly filed" when it is "'submitted according to the state's procedural requirements, such as the rules governing time and place of filing.'" *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001) (quoting *Morris v. Horn,* 187 F.3d 333, 337 (3d Cir. 1999); *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir. 1998)); *see Merritt*, 326 F.3d at 162; *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) ("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."). "Untimely filing, absence of jurisdiction, failure to pay fees, and failure to obtain a requisite certificate of appealability are all examples of flaws going to the application for relief itself." *Satterfield v. Johnson*, 434 F.3d 185, 192 (3d Cir. 2006) (citation omitted).

Because the language of the AEDPA limits statutory tolling to "properly filed"

applications for state post-conviction or other collateral relief, the federal court applying the AEDPA must look to "state law governing when a petition for collateral relief is properly filed, and defer to a state's highest court when it rules on an issue." *Merritt*, 326 F.3d at 165-66 (citation omitted). Thus, if a PCRA petition is rejected by a state court as untimely, "that is the end of the matter" for purposes of § 2244(d)(2), "regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits . . . ." *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 86 (3d Cir. 2013) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005); *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). Indeed, it is well established that a petition for state post-conviction relief that was rejected by a state court as untimely is not "properly filed" pursuant to § 2244(d)(2) and accordingly does not toll the AEDPA's limitation period. Conversely, "if a state court fails to rule clearly on the timeliness of an application, a federal court 'must . . . determine what the state courts would have held in respect to timeliness.'" *Jenkins*, 705 F.3d at 86 (quoting *Evans v. Chavis,* 546 U.S. 189, 198 (2006)); *see also Baker v. Horn*, 383 F. Supp. 2d 720, 738 (E.D. Pa. 2005) ("On the other hand, when a state court has not 'clearly ruled' on the timeliness of a state petition, it is the responsibility of the habeas court to consider whether the state post[-]conviction petition was timely filed as a matter of state law before tolling the AEDPA limitations period.") (citing *Carey*, 536 U.S. at 226-27 (remanding federal petition for consideration of whether state petition was timely as a matter of California law and consequently "properly filed" for purposes of AEDPA statutory tolling where California court had not clearly ruled on timeliness of state petition)).

While the law is clear that a federal habeas court must defer to the state court's ruling

dismissing a PCRA petition as untimely, here, the PCRA court made no such determination as to the timeliness of the second PCRA petition because it construed Rowe's petition as a motion for DNA testing rather than a second PCRA petition. Because the PCRA court did not clearly rule as to whether the petition was untimely under state, this Court is obliged to undertake its own independent inquiry as to whether the state petition was timely under state law. *Fahy,* 240 F.3d at 243-44 ("The AEDPA['s statutory tolling provision] requires us to interpret state law as we do when sitting in diversity cases."). In conducting this function in the absence of an express ruling from the PCRA court on the timeliness of Rowe's second PCRA petition, it is clear that had the state court more appropriately considered the second post-conviction filing as a PCRA petition, it would have nevertheless found the second PCRA petition to be patently untimely under 42 Pa. Cons. Stat. § 9545(b)(1), which provides:

(b) Time for filing petition—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or law of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review.

Indeed, under the PCRA, an application for collateral relief must be filed within one year from the date the petitioner's conviction became final. *See* 42 Pa. Const. Stat. § 9545(b)(1). As this Court explained previously, Rowe's conviction became final on March 27, 2008. Rowe filed his second PCRA petition on September 6, 2011, exactly 1258 days after the deadline to file a PCRA petition, thus making his second PCRA petition untimely. Moreover, in construing Rowe's second PCRA petition liberally, *see Commonwealth v. Murray*, 392 A.2d 317, 319 (1978), it is evident that none of the exceptions to the PCRA's statute of limitations set forth under 42 Pa. Const. Stat. § 9545(b)(1) are applicable to Rowe's state court proceedings.[6] Therefore, Rowe's second PCRA petition does not constitute a "properly filed" application for state collateral review sufficient to toll the AEDPA's statute of limitations.[7] Accordingly, Rowe's petition is time-barred.

---

[6] The Court notes that Rowe did not raise any of these exceptions on collateral review or in support of the instant habeas petition.

[7] Although a properly filed initial PCRA petition may serve to toll the time for filing a federal habeas petition pursuant to § 2244(d)(2), there is no equivalent provision for filing under 42 Pa Cons. Stat. § 9545 that permits an initial PCRA petition to toll the time for filing a second PCRA petition. Stated differently, Rowe's filing of a first PCRA petition did not toll the one-year timeliness requirement under the PCRA with respect to the filing of his second PCRA petition. *See Commonwealth v. Davis*, 816 A.2d 1129, 1134-35 (Pa. Super. Ct. 2003) (explaining petitioner's inability to file a second PCRA petition until appeal from first PCRA petition was resolved did not toll one-year timeliness requirement under the PCRA; petitioner was still obligated to plead and prove exception to PCRA's timeliness requirement to invoke state court's jurisdiction).

B. ACTUAL INNOCENCE CLAIM[8]

The Court construes Rowe's petition as alternatively advancing a claim of actual innocence as a mechanism to have this Court consider his petition on the merits. In *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), the Supreme Court held that a convincing claim of actual innocence may **overcome** the AEDPA's statute of limitations.[9] "[A]ctual innocence requires a showing of factual innocence, not mere legal insufficiency." *Sweger v. Chesney,* 294 F.3d 506, 523 (3d Cir. 2002). On an actual innocence claim, "a petitioner must demonstrate two things. . . . First, a petitioner must present new, reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Saunders v. Asure*, No. 1:CV-13-3056, 2015 WL 139729, at *2 (M.D. Pa. Jan. 12, 2015) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Second, a petitioner must show by a preponderance of the evidence that '"no reasonable juror would have voted to find [him] guilty had the[ ] piece[ ] of evidence been available at trial." *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012). The actual innocence standard "is demanding and permits review only in the extraordinary case." *House v. Bell,* 547 U.S. 518, 538 (2006).

---

[8] The Court rejected Rowe's alternative claim of actual innocence in its initial Report and Recommendation dated August 10, 2015. However, the District Judge declined to address the Court's recommendations with respect to this issue in light of having found that Rowe's petition was timely filed due to statutorily tolling of the AEDPA's statute of limitations. Therefore, the undersigned repeats much of its analysis here for the District Court, but includes supplementary analysis directed at Rowe's additional claims of actual innocence.

[9] The Supreme Court in *McQuiggin* further clarified that a successfully-invoked plea of actual innocence differs from equitable tolling in that actual innocence serves to override AEDPA's one-year limitations period rather than merely extending the time to file a federal habeas petition. 133 S.Ct. at 1931.

Here, Rowe argues that the following categories of evidence would have proven his innocence had such evidence been presented at trial: (1) exculpatory DNA evidence showing that his DNA was not under the victim's fingernails, on the rope recovered from the victim, or on the cigarette butt found next to the victim; (2) expert testimony that the time of death was incorrect, and that his vehicle could not have left the deep tire impressions at the crime scene; (3) witness testimony that Rowe exhibited good character; that Rowe had moved out of his mother's residence due to her abusive tendencies; and that family, friends, and local citizens were afraid of Rowe's mother; (4) witness testimony that contradicts trial witness' testimony identifying Rowe and his vehicle; (5) affidavits implicating Rowe's mother and Richard Stokes in the murder. (Doc. 11, at 95-96). Considering these claims, it is clear that Rowe fails to meet the "extremely high" burden of demonstrating actual innocence.

### 1. Exculpatory DNA Evidence (Group 1)

Rowe has yet to obtain DNA testing of certain evidence through post-conviction proceedings. However, Rowe nevertheless attempts to argue here that future DNA testing, assuming exculpatory results, would establish his actual innocence. The speculative nature of Rowe's claims fall far short of the tangible, reliable evidence that would be needed for Rowe to prove his factual innocence. Even assuming, *arguendo*, that Rowe was able to obtain DNA testing that produced definitive results revealing that Rowe's DNA was not located under the victim's fingernails, on the rope, or on the cigarette butt, such evidence would still not conclusively establish his actual innocence. *See Commonwealth v. Williams,* 35 A.3d 44 (Pa. Super. Ct. 2011); *Commonwealth v. Smith,* 889 A.2d 582 (Pa. Super. Ct. 2005) (holding that, even if DNA testing were to generate the result that appellant anticipates, absence of his DNA from

the victim's fingernails, this would not establish his innocence of her murder); *Commonwealth v. Heilman*, 867 A.2d 542 (Pa. Super. 2005) ("[I]n DNA, as in other areas, an absence of evidence is not evidence of absence."). This conclusion is bolstered by the PCRA court's finding with respect to Rowe's request for DNA testing of the victim's fingernails, upon reviewing the underlying state court record and his request for DNA testing, that Rowe failed to make a *prima facie* demonstration that the DNA evidence would establish his actual innocence, as there was no evidence offered suggesting that the victim scratched her assailant. Rowe appears to be operating under the mistaken presumption that there was no other evidence of record to tie him to the murders. Thus, Rowe's claim of actual innocence, based on potentially exculpatory DNA evidence, fails to satisfy the exacting standard of actual innocence.

### 2.   Expert & Witness Testimony (Groups 2, 3 & 4)

Rowe's allegations relating to certain witness testimony are wholly devoid of any support in the form of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" and thus, are completely unavailing.

Rowe has provided no affidavits or sworn statements to support his actual innocence claim, but for bald assertions of what testimony these purported witnesses could provide given the opportunity. Indeed, the Court only has cursory descriptions of these witnesses' potential testimony, which does not enable it to evaluate whether such testimony is "new" and "reliable." The Court does not find such bald assertions trustworthy in the least, and thus, those assertions are insufficient to warrant consideration of Rowe's actual innocence claim. *See Lewis v. United States*, No. CIV.A. 13-1453 JEI, 2015 WL 3651721, at *7 (D.N.J. June 11, 2015).

Moreover, with respect to Rowe's allegations concerning witness testimony that would

purportedly contradict the witness testimony presented at trial regarding the identification of Rowe and his vehicle, such evidence bears on credibility and is thus, inadequate to establish actual innocence. *See Sawyer v. Whitley,* 505 U.S. 333, 349 (1992) ("[L]atter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [a prosecution witness's] account of petitioner's actions."); *Hussmann v. Vaughn,* 67 F. App'x 667, 668–69 (3d Cir. 2003) (actual innocence not established where two new affidavits would merely impeach credibility of Commonwealth witness). The same rationale applies equally to those allegations of witness testimony concerning Rowe's good character and his mother's propensity for violence. Such allegations not only were available at the time of trial, but also are in no way sufficiently probative of Rowe's asserted innocence. *Evans v. York Cty. Dep't of Prob. & Parole,* No. 3:14-CV-2333, 2015 WL 5099278, at *9 (M.D. Pa. Aug. 31, 2015) ("While the introduction of the reputation evidence at issue in a new trial may raise doubts as to Petitioner's guilt, it is determined that Petitioner has failed to establish that this evidence is not of the kind that would make it more likely than not that no reasonable juror would convict him.").

### 3.  Belated Witness Affidavits (Group 5)

With respect to the later-acquired affidavits from witnesses that Rowe believes would prove that Rowe's mother committed the murders, such testimony does not show by a preponderance of the evidence that no reasonable juror would have voted to find Rowe guilty had these affidavits been available at trial. *See Hutson v. Diguglielmo,* 262 F. App'x 474 (3d Cir. 2008) (murder case, belated witness statements insufficient); *Fielder v. Varner,* 379 F.3d 113 (3d Cir. 2004) (murder case, belated witness statement insufficient); *Hubbard v. Pinchak,* 378 F.3d

- 16 -

333 (3d Cir. 2004) (murder case, petitioner's belated statement insufficient). The affidavits in support of this alternative theory were obtained in October of 2008 from Caroline Rowe, Robert Lick, Janet Kunkle, and Loyd Reiman. Both Caroline Rowe and Lloyd Reiman testified that on February 10, 2004, while at a family member's viewing, Rowe's mother indicated in response to questions regarding how Rowe was doing, that Rowe "was having problems with a girl who he liked but that she was going to take care of everything and he wouldn't have to worry anymore." (Doc. 35-3, at 30-32). Janet Kunkle testified that on April 11, 2004, Rowe and his mother were over for dinner and that Rowe and his mother were arguing about the prospect of Rowe having to pay child support. Janet Kunkle also testified that she later visited Rowe's mother in jail and informed Rowe's mother that Rowe had used her truck the day of the murders, to which Rowe's mother responded: "Oh, is that why my truck wasn't parked where I always park it[?]" (Doc. 35-3, at 31). Robert Lick testified that "at an unknown time Cheryl Kunkle approached me to see if I know how to make a hangman's knot and I told her yes but I wasn't going to show her." (Doc. 35-3, at 33).

In evaluating these affidavits, the Court finds that the testimony contained within them provide absolutely no material that would create a colorable claim of innocence, let alone call into question Rowe's involvement in the crime. These vague, out-of-context statements with no frame of reference attributed to Rowe's mother are inherently unreliable and completely irrelevant and at best, suggest that Rowe's mother may have been an accomplice, which is far from "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *McQuiggin,* 133 S.Ct. at 1936 (quoting *Schlup,* 513 U.S. at 316).

Notably, the Superior Court addressed similar testimony on appeal of Rowe's first

PCRA petition. At the evidentiary hearing held on issues raised in the first PCRA petition, Rowe called as a witness Cynthia Reiman, Rowe's aunt, who testified that on February 10, 2004, Rowe's mom told her that Rowe had girl problems but that she was taking care of the matter. The PCRA court noted that "Reiman could offer no details regarding what [Rowe's mother] intended when she said that she was going to 'take care' of Rowe's 'girl problems.'" (Doc. 35-1, at 15). Even if she was able to offer such testimony, the PCRA court concluded that her limited testimony was "highly unlikely to sway the jury to acquit [Rowe], since the Commonwealth included expert testimony at trial that excluded [Rowe's mother] as a possible contributor of the DNA on the rope found on [the victim's] neck." (Doc. 35-1, at 15).

Further, the Court finds persuasive the Superior Court's finding on appeal from Rowe's conviction that the evidence of Rowe's guilt was overwhelming, which included testimony from Rowe's girlfriend that Rowe had asked her to look up information on the internet regarding how to tie a noose, and was corroborated by the admission into evidence of webpages accessed on that computer and saved on the computer's hard drive; the testimony provided by the manager of the hardware store that Rowe came into the store the morning of the murder and asked him where he could find rope; and testimony regarding the proximity of Rowe's car to the victims' home on the morning of the murders. None of the affidavits now proffered by Rowe manage to address or rebut this evidence, including the expert testimony at trial excluding Rowe's mother as a possible contributor of the DNA of the rope found on the victim's neck.

Accordingly, Rowe has failed to present evidence establishing his actual innocence sufficient to overcome the AEDPA's statute of limitations.

### III.   RECOMMENDATION

Based on the foregoing, it is recommended that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred. It is further recommended that the Court decline to issue a certificate of appealability, as the Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated: June 1, 2016                                        *s/ Karoline Mehalchick*
                                                           **KAROLINE MEHALCHICK**
                                                           **United States Magistrate Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREGORY ALAN ROWE, | |
| Petitioner, | CIVIL ACTION NO. 3:13-CV-02444 |
| v. | (CAPUTO, J.) |
| | (MEHALCHICK, M.J.) |
| SUPT. NANCY GIROUX, et al., | |
| Respondents. | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 1, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: June 1, 2016

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**