# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY ALAN ROWE, | |
| Petitioner, | CIVIL ACTION NO. 3:13-CV-02444 |
| v. | (JUDGE CAPUTO) |
| SUPT. NANCY GIROUX, et al., | (MAGISTRATE JUDGE MEHALCHICK) |
| Respondents. | |

## **MEMORANDUM**

Presently before me is a Report and Recommendation ("R & R") of Magistrate Judge Mehalchick (Doc. 42), which recommends dismissal of Petitioner Gregory Alan Rowe's Petition for Habeas Corpus (Doc. 1) on timeliness grounds (Doc. 1).  Because I agree that the Petition was untimely filed, the R & R will be adopted in its entirety and the Petition will be dismissed.

## I. Background

Petitioner Gregory Alan Rowe was convicted before the Court of Common Pleas of Pike County of two counts of first degree murder, two counts of third degree murder, endangering the welfare of a child, and possession of an instrument of crime. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike County C.C.P.).[1]  On February 8, 2006, Rowe was sentenced to two (2) consecutive life terms followed by eighteen (18) months to ten (10) years imprisonment. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike County C.C.P.).  Rowe filed a direct appeal to the Pennsylvania Superior Court, which affirmed the judgment of sentence on April 9, 2007.  (Doc. 7-2.)

---

[1] A federal habeas court may take judicial notice of state court records. *See Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988) (taking judicial notice of all relevant parts of the state court record, whether or not they appeared in the joint appendix prepared by the parties to the appeal).  Accordingly, I have taken judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Pike County.

Rowe filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on December 28, 2007, thereby concluding the direct review process. (Doc. 7-3.)

Rowe filed a petition for collateral relief under the Pennsylvania Post Conviction Relief Act ("PCRA") in the Pike County Court of Common Pleas on December 15, 2008, and after the appointment of counsel, an amended PCRA petition was filed on April 30, 2009. In his amended PCRA petition, Rowe raised issues of trial counsel's ineffectiveness in failing to request or obtain DNA testing of the victim's fingernails. (Doc. 7-6.) On December 23, 2009, the PCRA court issued an order denying Rowe's PCRA petition for relief. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike County C.C.P.). On December 30, 2009, Rowe filed a timely notice of appeal of the PCRA decision with the Pennsylvania Superior Court. On February 26, 2010, the Superior Court affirmed the PCRA court's decision. (Doc. 7-4.) Rowe filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on July 25, 2011. (Doc. 7-5.)

On September 6, 2011, Rowe filed a second PCRA petition reiterating earlier ineffective assistance of counsel claims attached to a motion requesting post-conviction DNA testing pursuant to 42 Pa.C.S. § 9543.1. (Doc. 20, Ex. 1.) Rowe's second PCRA petition raised issues of trial counsel and PCRA counsel's ineffectiveness in failing to request or obtain DNA testing of the victim's fingernails; failing to interview or subpoena Joanne Kellerman, a rebuttal witness who would purportedly contradict Commonwealth witness Eric Story; and failing to object to inadmissible evidence. (Doc. 20, Ex. 1.) Despite Rowe's explicit instructions that the motion for DNA testing be docketed separately from the second PCRA petition, the Pike County Court of Common Pleas nevertheless construed both documents as one post-conviction motion for DNA testing. Rowe's motion for DNA testing was denied on January 9, 2012. A timely appeal followed. On June 20, 2013, the

2

Superior Court affirmed the January 9, 2012 order denying Rowe's request for DNA testing. In doing so, the Superior Court also interpreted Rowe's filing as a motion for DNA testing filed pursuant to 42 Pa.C.S. § 9543.1. Rowe promptly filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied on December 3, 2013. *Commonwealth v. Rowe*, No. CP-52-CR-0000181-2004 (Pike County C.C.P.). (*See also* Doc. 36-3.)

On September 24, 2013, Rowe submitted the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) On December 20, 2013, I entered a Show Cause Order, directing Respondents to respond only to Rowe's motion for stay and abeyance and to specifically address any arguments with respect to the timeliness of Rowe's petition. (Doc. 4.) On January 9, 2014, Respondents filed a response to my Order (Doc. 7) and on January 28, 2014, Rowe filed his reply (Doc. 9).

On August 10, 2015, Magistrate Judge Mehalchick entered a Report and Recommendation recommending that Rowe's petition be dismissed as untimely. (Doc. 19.) In doing so, Magistrate Judge Mehalchick facially accepted for purposes of her analysis that Rowe's post-conviction motion was that of a motion for DNA testing as construed by the state courts rather than a second PCRA petition filed pursuant to 42 Pa.C.S. § 9545(b)(1) and did not delve into a discussion of whether that filing, if deemed to be a second PCRA petition, was "properly filed" as required to toll the statute of limitations. Rowe subsequently objected to the Report and Recommendation, arguing, among other things, that the second filing should have been construed as a properly filed PCRA petition, thus tolling the statute of limitations and making his federal habeas petition timely. (Doc. 20.)

On October 14, 2015, I rejected Magistrate Judge Mehalchick's Report and Recommendation, and remanded the matter back to her for further adjudication. (Doc. 25.) Specifically, I noted that the second filing should have been construed as a second PCRA petition, rather than a motion for DNA testing as construed by the state courts, and that the petition should therefore not be dismissed and the parties should proceed on the merits.

3

In accordance with my October 14, 2015, supplemental briefing was ordered from the parties. (Doc. 26; *see also* Doc. 33 (Respondents' response to Rowe's habeas petition); (Doc. 40 (Rowe's reply).) On June 1, 2016, Magistrate Judge Mehalchick issued the instant Report and Recommendation, this time construing Rowe's second filing as a second PCRA petition rather than a motion for DNA testing. (Doc. 42.) Magistrate Judge Mehalchick found that even when construed as a second PCRA petition, Rowe's second filing still did not cause the filing of his habeas petition to be timely and additionally, rejected Rowe's actual innocence claim. On August 15, 2016, Rowe filed his objections to the Report and Recommendation.[2] (Doc. 47.) The Report and Recommendation and Rowe's objections thereto are now ripe for disposition.

## II. Legal Standard

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(C)). However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. U.S. Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985). At the very

---

[2] Initially, because Rowe failed to file timely objections to the instant Report and Recommendation, I adopted the Report and Recommendation in its entirety. (Doc. 43.) However, upon later being advised that Rowe never received the Report and Recommendation, I vacated that Order and extended the deadline for Rowe to file his objections to August 17, 2016. (Doc. 46.) Rowe's objections were filed before this deadline, and are therefore timely.

least, the court should review uncontested portions for clear error or manifest injustice. *Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998).

### III. Discussion

Here, Magistrate Judge Mehalchick considered several arguments by Respondents as to why Rowe's habeas claims should be denied.  Primarily, they argue that Rowe's habeas petition is untimely even when construing Rowe's second collateral review filing as a second PCRA petition, and therefore was not "properly filed" in accordance with 28 U.S.C. § 2244(d)(1)(A).  Although I previously rejected timeliness objections to the filing of Rowe's petition, that analysis was based on the initial Report and Recommendation's treatment of Rowe's second filing as a motion for DNA testing, as opposed to a second PCRA petition.  Now that I have had the benefit of a complete record of the state court proceedings as well as full briefing by the parties, which this time addresses Rowe's second filing as a second PCRA petition rather than a motion for DNA testing, I find that Rowe's petition was untimely filed and should therefore be dismissed.[3]

### A.   AEDPA's Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal habeas corpus petitions pursuant to 28 U.S.C. § 2254.  *See* 28 U.S.C. § 2244(d).  The statute also prescribes how the one-year limitations period is calculated, including the date on which the limitations period begins, 28 U.S.C. § 2244(d)(1), and the circumstances under which the limitations period may be tolled, 28 U.S.C. § 2244(d)(2).

Under AEDPA, a state prisoner generally must file any federal habeas corpus

---

[3] To the extent that this Memorandum conflicts with my October 14, 2015 Memorandum on the issue of timeliness, this Memorandum is controlling, since I have now had the benefit of a complete record and full briefing on the issue in accordance with my earlier ruling that Rowe's filing should be construed as a second PCRA petition, as opposed to a post-conviction motion for DNA testing.

5

petition within one (1) year of the date that his conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Where an inmate does not pursue direct review of his conviction all the way to the Supreme Court of the United States, his conviction becomes final when the time for pursuing direct review in that Court, or at any level of state court, expires. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012).

Here, the Pennsylvania Supreme Court denied Rowe's petition for allowance of appeal from the order of the Pennsylvania Superior Court on December 28, 2007. However, under Pennsylvania state law, Rowe had ninety (90) days after the Pennsylvania Supreme Court denied allocator in which to petition for a writ of certiorari in the Supreme Court of the United States. *See* 42 Pa.C.S. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."); S.Ct. R. 13(1) (providing parties with ninety (90) days to file a petition for a writ of certiorari in the Supreme Court); *see also Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999) ("After ninety days, the Pennsylvania Supreme Court's decision became final because the time for seeking certiorari expired."). Hence, Rowe's conviction became final, and AEDPA's limitations period began to run, on March 27, 2008 (ninety (90) days after December 28, 2007). *Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999). Absent any applicable tolling period, Rowe had one (1) year from that date, until March 27, 2009, to timely file his federal habeas petition for a writ of habeas corpus. The instant petition was filed more than four (4) years later on September 24, 2013. Accordingly, absent any applicable tolling period, Rowe's instant petition is time-barred.

**B.    Statutory Tolling**

A person in state custody may toll the running of AEDPA's limitations period during the time in "which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). Here, Rowe filed his first *pro*

*se* PCRA petition in the Pike County Court of Common Pleas on December 15, 2008, which was 263 days after his conviction became final. This served to toll AEDPA's statute of limitations from December 15, 2008 (the date Rowe timely filed his first *pro se* PCRA petition) to July 25, 2011 (the date the Pennsylvania Supreme Court denied his request for allowance of appeal), with 102 days remaining in the federal habeas filing period (one year less 263 days).[4] Therefore, Rowe had until November 4, 2011 to file his habeas petition. Rowe filed his Section 2254 petition on September 24, 2013, 690 days after the deadline.

The parties dispute whether Rowe's second post-conviction September 6, 2011 filing seeking DNA testing, which I previously held should be construed as a second PCRA petition, was a "properly filed" application for state collateral review as required to trigger the tolling mechanism of Section 2244(d)(2). If Rowe's second PCRA petition was "properly filed," the statute of limitations for his habeas petition would have been further tolled from September 6, 2011 (the date his second PCRA petition was filed in state court) through December 3, 2013 (the date the Pennsylvania Supreme Court denied his petition for allowance of appeal), making his September 24, 2013 habeas petition timely. *See Merritt v. Blaine*, 326 F.3d 157, 161-62 (3d Cir. 2008). Thus, the relevant issue is whether Rowe's second PCRA petition was "properly filed."[5]

---

[4] As explained by Magistrate Judge Mehalchick, the ninety (90) day period during which a state prisoner may file a petition for a writ of certiorari in the United States Supreme Court from the denial of his state PCRA petition "does not toll the one year limitations period set forth at 28 U.S.C. § 2244(d)(2)," "especially where the state prisoner fails to file such a petition." *Stokes v. Dist. Attorney of City of Phila.*, 247 F.3d 539, 543 (3d Cir. 2001); *Hubley v. Superintendent, SCI Camp Hill*, 57 F. App'x 927, 929 (3d Cir. 2003) (citing *Stokes*). Thus, the one-year statutory period in this case resumed again on July 25, 2011, the date the Pennsylvania Supreme Court denied Rowe's petition for allocatur.

[5] As explained in my prior Memorandum, an application is "properly filed" when it is "submitted according to the state's procedural requirements, such as the rules governing time and place of filing." *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001) (citation and internal quotation marks omitted).

Although the law is clear that a federal habeas court must defer to the state court's ruling as to whether a PCRA petition is untimely, here, the PCRA court made no such determination as to the timeliness of the second PCRA petition because as explained earlier, it incorrectly construed Rowe's petition as a motion for DNA testing rather than a second PCRA petition.  Therefore, Magistrate Judge Mehalchick properly undertook her own independent inquiry as to whether the state petition was timely under state law.  (Doc. 42, at 11 (citing *Fahy*, 240 F.3d at 243-44).)  Upon reviewing the record and the full briefing by the parties, I agree with Magistrate Judge Mehalchick's recommendation and find that had the state court properly considered the second post-conviction filing as a PCRA petition, it would have nevertheless found the second PCRA petition to be untimely under 42 Pa.C.S. § 9545(b)(1), which requires that an application for collateral relief be filed within one (1) year from the date that the petitioner's conviction becomes final.

Here, the Pennsylvania Supreme Court denied Rowe's petition for allowance of appeal from the order of the Pennsylvania Superior Court on December 28, 2007. However, under Pennsylvania state law, Rowe had ninety (90) days after the Pennsylvania Supreme Court denied allocator in which to petition for a writ of certiorari in the Supreme Court of the United States, at which point his conviction would become final.  *See* 42 Pa.C.S. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."); S.Ct. R. 13(1) (providing parties with ninety (90) days to file a petition for a writ of certiorari in the Supreme Court); *see also Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999) ("After ninety days, the Pennsylvania Supreme Court's decision became final because the time for seeking certiorari expired.").  Hence, Rowe's conviction became final, and AEDPA's limitations period began to run, on March 27, 2008, which is the date on which his ninety (90) day period to seek certiorari in the Supreme Court expired. *Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999).  Absent any applicable

tolling period, Rowe had one (1) year from that date, until March 27, 2009, to timely file his federal habeas petition for a writ of habeas corpus.

However, Rowe's second PCRA petition was not filed until September 6, 2011, exactly 1258 days after the deadline had passed. Therefore, Rowe's second PCRA petition was untimely and therefore not a "properly filed" application for state collateral review sufficient to toll the statute of limitations under AEDPA. Accordingly, Rowe's petition must be dismissed as time-barred.[6]

## C.   Actual Innocence

Although a claim of actual innocence may overcome AEDPA's statute of limitations, Rowe has failed to establish an actual innocence claim sufficient to overcome the untimeliness of his petition. *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013) (holding that a convincing claim of actual innocence may overcome AEDPA's statute of limitations). Actual innocence requires a showing of factual innocence, not mere legal insufficiency. *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002). First, a petitioner

---

[6]   In his objections, Rowe argues that his second PCRA petition *was* timely because "it was filed within one year from October 24, 2011, the date his conviction became final." (Doc. 47, at 13.) However, as explained earlier, Rowe's conviction became final on March 27, 2008, not on October 24, 2011. Although a properly filed initial PCRA petition may serve to toll the time for filing a federal habeas petition pursuant to Section 2244(d)(2), there is no equivalent provision for filing under 42 Pa.C.S. § 9545 that permits an initial PCRA petition to also toll the time for filing a second PCRA petition. In other words, Rowe's filing of a first PCRA petition did not toll the one-year timeliness requirement under the PCRA with respect to the filing of his second PCRA petition. *See Commonwealth v. Davis*, 816 A.2d 1129, 1134-35 (Pa. Super. Ct. 2003) (explaining that the petitioner's inability to file a second PCRA petition until appeal from the first PCRA petition was resolved did not toll the one-year timeliness requirement under the PCRA). Rowe appears to believe that his conviction became final on October 24, 2011, rather than March 27, 2008, based on this incorrect assumption that the filing of his first PCRA petition tolled the timeliness requirement for filing his second PCRA petition. Additionally, none of the exceptions to the PCRA's statute of limitations set forth in 42 Pa.C.S. § 9545(b)(1) apply here, nor did Rowe raise any of these exceptions on collateral review or in support of the instant habeas petition.

must present new, reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial. *Saunders v. Asure*, No. 1:cv-13-3056, 2015 WL 139729, at *2 (M.D. Pa. Jan. 12, 2015) (citation and internal quotation marks omitted). Second, a petitioner must show by a preponderance of the evidence that no reasonable juror would have voted to find him guilty had the piece of evidence been available at trial. *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012). The standard for actual innocence "is demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006).

Here, Rowe argues that the following categories of evidence would have proven his innocence had such evidence been presented at trial: (1) exculpatory DNA evidence showing that his DNA was not under the victim's fingernails, on the rope recovered from the victim, or on the cigarette butt found next to the victim; (2) expert testimony that the time of death was incorrect, and that his vehicle could not have left the deep tire impressions at the crime scene; (3) witness testimony that Rowe exhibited good character; that Rowe had moved out of his mother's residence due to her abusive tendencies; and that family, friends, and local citizens were afraid of Rowe's mother; (4) witness testimony contradicting trial witness' testimony identifying Rowe and his vehicle; and (5) affidavits implicating Rowe's mother and Richard Stokes in the murder. (Doc. 11, at 95–96.) Upon considering these claims, I find that Rowe fails to meet the demanding burden of demonstrating actual innocence sufficient to overcome the untimeliness of his petition.

### 1. Exculpatory Evidence (Group 1)

Although Rowe has not yet obtained DNA testing of certain evidence through post-conviction proceedings, he nevertheless attempts to argue that future DNA testing, assuming exculpatory results, would establish his actual innocence. Rowe's argument is speculative at best, and therefore falls short of the tangible, reliable evidence needed for him to prove his factual innocence. For example, even assuming that Rowe was able to obtain DNA testing that revealed that his DNA was not located under the victim's

10

fingernails, on the rope, or on the cigarette butt, this evidence still would not conclusively establish his actual innocence.  *Commonwealth v. Smith*, 889 A.2d 582 (Pa. Super. Ct. 2005) (holding that even if DNA testing were to generate the result that the appellant anticipates, absence of his DNA from the victim's fingernails, this would not establish his innocence of her murder).  Therefore, Rowe's reliance on potentially exculpatory DNA evidence fails to satisfy the standard for his actual innocence claim.

### 2.     Expert and Witness Testimony (Groups 2, 3, and 4)

Rowe's reliance on certain witness testimony is also unavailing.  He has failed to provide any affidavits or sworn statements to support his actual innocence claim.  Rather, he only offers bald assertions of what testimony these purported witnesses could have provided given the opportunity.  Rowe has only submitted cursory descriptions of these witness' potential testimony, which does not enable me to evaluate whether such testimony is "new" and "reliable."  I agree with Magistrate Judge Mehalchick's characterization of these descriptions as untrustworthy, and therefore insufficient to warrant consideration of Rowe's actual innocence claim.  (Doc. 42, at 15 (citing *Lewis v. United States*, No. Civ-A-13-1453, 2015 WL 3651721, at *7 (D.N.J. June 11, 2015).)

Additionally, with respect to Rowe's allegations concerning witness testimony that would purportedly contradict the witness testimony presented at trial regarding the identification of him and his vehicle, such evidence bears on credibility, and is thus inadequate to establish actual innocence.  *See Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) ("[L]atter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [a prosecution witness's] account of petitioner's actions."); *Hussmann v. Vaughn*, 67 F. App'x 667, 668-69 (3d Cir. 2003) (actual innocence not established where two new affidavits would merely impeach the credibility of a Commonwealth witness).  This same rationale applies equally to the allegations of witness testimony concerning Rowe's good character and his mother's propensity for

violence. Such allegations were not only available at the time of trial, but also fail to sufficiently establish Rowe's asserted innocence. *Evans v. York Cty. Dep't of Prob. & Parole*, No. 3:14-cv-2333, 2015 WL 5099278, at *9 (M.D. Pa. Aug. 31, 2015) ("While the introduction of the reputation evidence at issue in a new trial may raise doubts as to Petitioner's guilt, it is determined that Petitioner has failed to establish that this evidence is not of the kind that would make it more likely than not no reasonable juror would convict him.").

In his objections, Rowe argues that because the jury did chose not to impose the death penalty after the presentation of this character evidence after they rendered their verdict and during the death penalty phase, it is more likely than not that no reasonable juror would have convicted him had those witnesses been presented *at* trial. (Doc. 47, at 24.) This argument is unpersuasive. The fact that a juror might choose not to impose the death penalty does not mean that the juror believes that the defendant is not guilty of the crime committed. Therefore, Rowe's reliance on this testimony fails to satisfy the standard for his actual innocence claim.

### 3.    Belated Witness Affidavits (Group 5)

Finally, with respect to the later-acquired affidavits from witnesses that Rowe believes would prove that his mother committed the murders, such testimony does not show by a preponderance of the evidence that no reasonable juror would have voted to find Rowe guilty had these affidavits been available at trial. *See Hutson v. Diguglielmo*, 262 F. App'x 474 (3d Cir. 2008) (belated witness statements insufficient in murder case); *Fielder v. Varner*, 379 F.3d 113 (3d Cir. 2004) (same). These affidavits in support of this alternative theory were obtained in October of 2008 from Caroline Rowe, Robert Lick, Janet Kunkle, and Lloyd Reiman. Both Caroline Rowe and Lloyd Reiman testified that on February 10, 2004, while at a family member's viewing, Rowe's mother indicated in response to questions about how Rowe was doing, that Rowe "was having problems with a girl who he liked but that she was going to take care of everything and he wouldn't have to worry anymore." (Doc. 35-3, at 30-32.) Janet Kunkle testified that on April 11,

2004, Rowe and his mother were over for dinner and that Rowe and his mother were arguing about the prospect of Rowe having to pay child support.  Janet Kunkle also testified that she later visited Rowe's mother in jail and informed Rowe's mother that Rowe had used her truck the day of the murders, to which Rowe's mother responded: "Oh, is that why my truck wasn't parked where I always park it[?]" (Doc. 35-3, at 31.) Robert Lick testified that "at an unknown time Cheryl Kunkle approached me to see if I know how to make a hangman's knot and I told her yes but I wasn't going to show her." (Doc. 35-3, at 33.)

In evaluating these affidavits, I find that this testimony fails to establish a colorable claim for actual innocence, let alone call into question Rowe's involvement in the crime.  The vague, out-of-context statements with no frame of reference attributed to Rowe's mother are unreliable, and at best, suggest that Rowe's mother may have been an accomplice, which is far from "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *McQuiggin*, 133 S.Ct. at 1936 (citation and internal quotation marks omitted).  Additionally, as noted at an evidentiary hearing in the PCRA court below, such testimony was "highly unlikely to sway the jury to acquit [Rowe], since the Commonwealth included expert testimony at trial that excluded [Rowe's mother] as a possible contributor of the DNA on the rope found on [the victim's] neck." (Doc. 35-1, at 15.)

Ultimately, the evidence of Rowe's guilt was overwhelming.  There was testimony from Rowe's girlfriend that Rowe had asked her to look up information online regarding how to tie a noose, which was corroborated by the admission into evidence of webpages accessed on that computer and saved on the computer's hard drive; the testimony provided by the manager of the hardware store that Rowe came into the store the morning of the murder and asked him where he could find rope; and testimony regarding the proximity of Rowe's car to the victims' home on the morning of the murders.  None of the affidavits proffered now by Rowe manage to sufficiently address or rebut this evidence.  In his objections, Rowe simply states that this "overwhelming evidence" was

"either unconstitutional/inadmissible; unreliable and speculative, and easily proven as untruthful, deceitful and complete contradiction to the actual physical and corroborating evidence of innocence," without any explanation to support this blanket assertion. (Doc. 47, at 28.) Accordingly, Rowe has failed to present evidence establishing his actual innocence sufficient to overcome AEDPA's statute of limitations.[7]

## IV. Conclusion

For the above stated reasons, I will adopt the Report and Recommendation (Doc. 42) and Rowe's Petition for Writ of Habeas Corpus (Doc. 1) will be dismissed with prejudice.

An appropriate order follows.

August 23, 2016  
Date

/s/ A. Richard Caputo  
A. Richard Caputo  
United States District Judge

---

[7]  None of the other factors cited by Rowe in his objections justifies equitable tolling here either. For example, Rowe also argues that (1) his PCRA counsel failed to preserve, present, and litigate his ineffective assistance of counsel claims on his first PCRA review; (2) Pennsylvania law required him to wait until his first PCRA proceedings were completed before he could file his second PCRA petition; (3) he exhausted his available state remedies of his constitutional claims in order to preserve his federal rights; (4) he diligently and reasonably asserted his claims; and (5) he is sentenced to two (2) consecutive life sentences without the possibility of parole. (Doc. 47, at 19.) However, there is no legal authority to support Rowe's claim that these factors justify equitable tolling.